Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications and the award of attorney's fees, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. On April 3, 1987, plaintiff sustained a compensable injury by accident in the course of his employment wherein he suffered a loss of teeth and was fitted with an implant.
3. At the time of the injury by accident of April 3, 1987, Liberty Mutual Fire Company was the carrier on the risk. Plaintiff's workers' compensation claim was accepted and medical bills and temporary total disability benefits were paid for the following periods:
May 8, 1987 — May 24, 1987
June 15, 1987 — June 22, 1987
June 27, 1987 — July 4, 1987
August 6, 1987 — August 22, 1987
December 3, 1987 — April 11, 1988
Said benefits were paid without the approval of a Form 21 Agreement.
4. No permanent partial disability benefits have been paid for the April 3, 1987 injury, and payment of these benefits remains at issue.
5. At the time of the April 3, 1987 injury by accident, plaintiff's average weekly wage was $450.00.
6. On March 11, 1993, plaintiff suffered another injury by accident in the course of his employment with the defendant-employer wherein he was again struck in the mouth. At the time of this injury by accident, American International Adjustment Company (now Sedgwick CMS, Inc.) was the third party administrator on the risk for the defendant-employer.
7. American International (now Sedgwick) stipulates that plaintiff suffered an injury by accident on March 11, 1993 but disputes that plaintiff's medical treatment and plaintiff's disability was causally related to the March 11, 1993 incident.
8. As a result of the injury by accident of March 11, 1993, plaintiff was out of work for 4.4 weeks — April 27, 1993 through May 4, 1993 and from July 10, 1993 through August 3, 1993.
9. At the time of the March 11, 1993 injury by accident plaintiff's average weekly wage was sufficient to generate the maximum compensation rate for 1993 — $442.00 per week.
10. The parties stipulate that the defendant-employer had three or more employees and the employee/employer relationship existed between the defendant-employer and the plaintiff at the time of both injuries by accident.
11. American International Adjustment Company (now Sedgwick) stipulates that the Industrial Commission has jurisdiction to hear the claim.
***********
 RULING ON EVIDENTIARY MATTERS
The objections contained in the depositions of Drs. Cooper and Hoodenpyle are OVERRULED.
During Dr. Irving's deposition, counsel for American International Adjustment Company, Inc., (now Sedgwick) attempted to introduce into evidence a letter dated September 27, 1993, signed by Thomas G. Stenger, DDS, MS. Counsel for the plaintiff and for Liberty Mutual objected since Dr. Stenger is now deceased and would not be subject to cross-examination. Said letter is hearsay as defined in Rule 801 of the N.C. Rules of Evidence and, pursuant to Rule 802, is not admissible. Furthermore, the letter has not been qualified as an exception under Rule 803. Moreover, there is no basis for the opinions expressed in said letter since Dr. Stenger never saw or examined the plaintiff but only reviewed certain information and x-rays in arriving at his opinions. Therefore, defendant American International Adjustment Company's (now Sedgwick) objection to the admission of said evidence isSUSTAINED.
***********
 RULING ON MOTIONS
Defendant-carrier Liberty Mutual's Motion to Dismiss plaintiff's claim pursuant to § 97-24 and § 97-47 is hereby DENIED.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a fifty year old male who had been working for the defendant-employer for approximately twenty-five years as a long haul truck driver. On March 11, 1993 plaintiff sustained an injury by accident when he was struck in the mouth by a load lock while unloading a truck. Defendant Sedgwick of the Carolinas, Inc. (formerly American International Adjustment Co., Inc.) was the third party administrator on the risk at the time of the injury.
2. On April 3, 1987, plaintiff sustained a prior compensable injury when a truck door struck him in the mouth while working for the same employer. At that time, defendant-carrier Liberty Mutual was on the risk.
3. Plaintiff's pre-1987 injury condition of his mouth consisted of seven natural teeth (the remaining eight had been lost prior to the 1987 injury due to decay), and extensive bridge work that had been performed by a general dentist, Dr. Robert Bass. As a result of the first injury on April 3, 1987 plaintiff suffered multiple fractures to crowns and fixed bridge work in his mouth, tooth loss, bone loss, and bone damage, all of which necessitated extensive periodontal work in an effort to restore his pre-1987 injury condition. The bone damage consisted of damage to the alveolar bone, or the bone housing in which the roots are placed.
4. Plaintiff was treated for his 1987 injury by Dr. Richard Hoodenpyle, who had to remove some of plaintiff's pre-existing bridge work to evaluate the extent of plaintiff's injuries from the 1987 accident. In doing so, Dr. Hoodenpyle was unable to place any prosthetic devices in plaintiff's mouth because his bone was too thin. Moreover, plaintiff had only seven natural teeth at that time, which was inadequate for placement of a temporary bridge. As a result, Dr. Hoodenpyle had to utilize subperiosteal implants, rather than implants into the bone, which would have been preferable.
5. After placement of the subperiosteal implants, plaintiff experienced continuing problems into 1991 forcing Dr. Hoodenpyle to remove a portion of the implant. However, after this treatment and prior to the 1993 injury, plaintiff testified that his mouth was in good shape, and that he returned to Dr. Hoodenpyle only for periodic cleanings. Plaintiff's testimony is accepted as credible.
6. Because it was the carrier on the risk at the time, Defendant Liberty Mutual paid for the medical treatment plaintiff received in connection with the 1987 injury, and plaintiff was compensated by that carrier for time missed from work. Although plaintiff suffered tooth loss and bone loss and damage as a result of the 1987 incident, Liberty did not pay plaintiff any permanent partial disability benefits in connection with the injury.
7. After the March, 1993 injury, plaintiff returned to Dr. Hoodenpyle in April, 1993 complaining that his bridge work was loose. Plaintiff also indicated that he had sustained three broken teeth in the March, 1993 work-related accident. Since he had only five natural teeth remaining, Dr. Hoodenpyle opted to remove them all. Dr. Hoodenpyle also removed plaintiff's subperiosteal implants, and in doing so, left part of a screw that was imbedded in the sinus area tissue in plaintiff's mouth. Due to concern regarding plaintiff's sinus exposure, he subsequently referred plaintiff to Dr. Steven Irving, an oral surgeon, for additional treatment.
8. Upon initial evaluation in June, 1993, Dr. Irving reviewed x-rays, which revealed a "cloudy left maxillary sinus," consistent with a sinus infection. After referring plaintiff to Dr. Paul Geniec for a second opinion on whether the foreign body (the screw) could be contributing to plaintiff's sinus infection, Dr. Irving and Dr. Geniec operated on plaintiff to explore his sinus area and remove the foreign body. The doctors discovered than plaintiff had an oro-antral communication, or a hole in the bone. According to Dr. Irving, this condition could have come from infection around the implant which could have pre-dated the March, 1993 injury; it could have been caused by the 1993 injury or by the original placement of the implant in 1987.
9. Plaintiff also sought treatment with Dr. Lyndon Cooper, a prosthodontist at the University of North Carolina Dental School, in the fall of 1996. Dr. Cooper's course of treatment consisted of what he described as a traditional course of dental therapy, including fabrication of a permanent maxillary denture, reconstruction of the orientation of the biting surface, and replacement of all crowns in plaintiff's lower jaw. Under Dr. Cooper's care, plaintiff had a stable dental rehabilitation.
10. Future treatment options were recommended by Dr. George H. Blakely, III, an oral and maxillofacial surgeon at UNC. Dr. Blakely examined plaintiff on June 8, 1998, indicating that plaintiff will need either a graft to his maxilla with eventual implant placement for an implant retained denture, or hydroxylapatite stocking, which would improve his existing denture stability.
11. Dr. Irving stated that it is entirely possible that a blow such as the one plaintiff sustained on March 11, 1993 could loosen a subperiosteal implant. Dr. Irving did not find anything to indicate that the information given to him by the plaintiff about his medical history was inaccurate. It was Dr. Irving's opinion that, assuming plaintiff had no problems until the second accident, it is probable that the blow to the mouth caused the problems for which Dr. Irving treated plaintiff.
12. Dr. Cooper also felt that the blow in March, 1993, could have dislodged and caused the rapid demise of plaintiff's implant as well as the bone supporting it. In his opinion, the March 11, 1993 injury was the precipitating cause of a very rapid demise of a very stable restoration, irrespective of whether it was with or without infection or with or without minor complications.
13. Dr. Hoodenpyle's opinion was that no other explanation existed for the condition of plaintiff's teeth except for the injury which took place on March 11, 1993. He also indicated that he could see fractures with the naked eye which could not have occurred but for trauma of some kind.
14. Based upon all the hearing testimony and the deposition testimony from all the treating physicians, the Commission finds that the traumatic blow plaintiff sustained on March 11, 1993 broke his dental implant and bridge and caused the need for additional medical treatment. Since Liberty Mutual was not on the risk at that time, it has no liability for medical treatment or compensation benefits for injuries caused or aggravated by the accident of March 11, 1993.
15. As the result of the April 3, 1987 injury by accident, plaintiff sustained the loss of two teeth, increased mobility of the five remaining teeth, and additional loss of available bone. Therefore, Liberty Mutual, which was on the risk at the time of this injury by accident, is responsible for payment of permanent partial disability benefits for plaintiff's loss of teeth and resulting disfigurement.
16. This case placed plaintiff in the middle of a dispute between a former carrier and now self-insured employer as to which entity was liable for plaintiff's medical treatment. There was no competent medical evidence in the record to support defendant self-insured employer's position that plaintiff's condition was causally related to the first injury by accident. Defendant self-insured employer unreasonably delayed the necessary and appropriate medical treatment required by plaintiff and defended this claim without adequate grounds.
***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of his compensable injury on April 3, 1987, plaintiff is entitled to permanent partial disability compensation in the amount of $2,000.00 for the permanent injuries sustained to his mouth. Said compensation is payable by the defendants Billings Freight and Liberty Mutual. N.C. Gen. Stat. § 97-31.
2. As a result of his compensable injury by accident of March 11, 1993, plaintiff is entitled to payment of temporary total disability compensation at the rate of $442.00 per week from April 27, 1993 — May 4, 1993 and from July 10, 1993 — August 3, 1993. These periods of disability and amounts of compensation have been stipulated to by the parties. Said compensation is payable by the defendants Billings Freight and American International Adjustment Company (now Sedgewick). N.C. Gen. Stat. § 97-29.
3. As a result of his compensable injury by accident of March 11, 1993, plaintiff is entitled to payment of medical expenses incurred resulting from the injuries sustained in said injury by accident, including future medical treatment necessary to effect a cure or provide relief, payable by defendants Billings Freight and American International Adjustment Company (now Sedgwick) N.C. Gen. Stat. § 97-25.
4. Plaintiff is entitled to an award of attorney's fees in the amount of $2,500 because the actions of defendant-employer and Sedgwick were based upon stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1; Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
5. Plaintiff is not entitled to an attorney's fee assessed against defendant-employer and Sedgwick pursuant to N.C. Gen. Stat. § 97-88 since plaintiff also appealed the Opinion and Award of the Deputy Commissioner and did so prior to defendant's notice of appeal.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his permanent partial disability compensation resulting from the April 3, 1987 injury by accident, defendants Billings Freight and Liberty Mutual shall pay to plaintiff the sum of $2,000.00 in one lump sum.
2. For his temporary total disability compensation, defendants Billings Freight and American International Adjustment Company (now Sedgwick) shall pay temporary total disability compensation to plaintiff at the rate of $442.00 per week, from April 27, 1993 — May 4, 1993 and from July 10, 1993 — August 3, 1993. Said amount shall be paid to plaintiff in a lump sum.
3. Defendants Billings Freight and American International Adjustment Company (now Sedgwick) shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on March 11, 1993, including future medical expenses designed to effect a cure or provide relief, when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
4. Defendant-employer and Sedgwick shall pay a reasonable attorney's fee to plaintiff's counsel in the amount of $2,500.00 as part of the costs of this action.
5. Defendant-employer and Sedgwick shall pay the costs.
This the ___ day of November 1999.
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
LKM/bjp